WHITE et al, vs BROWN.

Opinion delivered November 28, 1896.

*1. Lease in Violation of Chickasaw Law—Estopped.*

An owner, who through the fraud of a vendee, is induced to make a conveyance, is not estopped on a reconveyance, from attacking a lease to which he was not a party, which was made by the vendor while in possession, contrary to the law of the Chickasaw Nation prohibiting leases to non-citizens for longer period than one year.

*2. Courts—Term—Adjournment.*

The United States Court in the Indian Territory may adjourn its term to a day after the time for holding court at another place in the same district.

*3. Ejectment—Compensation for Improvements.*

In ejectment, the plaintiff will not be permitted to repossess himself of land, without paying the defendant for the value of improvements put on the land, but defendant will be required to account for the benefits from the use of the land.

Appeal from the United States Court for the Southern district of the Indian Territory.

C, B. KILGORE, Judge.

Action by Anna G. Brown against J. K. White and others. From a judgment for plaintiff, defendant appeals. Affirmed.

On the 3d day of October, 1893, the appellee, Mrs. Anna G. Brown, filed a complaint in ejectment in the United States court in the Indian Territory, at Ardmore, against the appellants, J. K. White, Mrs. J. C. Henderson, and 17 other parties, not necessary to mention. She alleged that she was a member of the Chickasaw tribe of Indians, and Indian by blood, and entitled to all the privileges and rights enjoyed by a citizen of the Chickasaw Nation; that, according to the laws and custums of the Chickasaw Nation, each individual citizen thereof is entitled to the free and exclusive use of any of the lands belonging to the Chickasaw Nation that may be fenced and improved; that she resides in that Nation; and that the defendants, the appellants in appeal, are citizens of the United States, but not citizens of the Chickasaw Nation. The complaint alleges that on the 1st day of January, 1890, she was the owner of and possessed of certain premises and improvements, known as the "Old Arr Ranch," consisting of about 2,000 acres of land, situated about 40 miles southwest of Ardmore; and that the defendants, on said day, ousted her from the possession of said premises, and since that time have held possession thereof; that the rents and revenues of the premises were worth about $4,000 per annum; and that she was entitled to remuneration therefor for three years, and to the possession of the lands and improvements. The defendants (appellants) filed a demurrer to the complaint, which the court subsequently overruled. A joint answer was, on December 21, 1894, filed by agreement of counsel. The answer, among other things, alleges that the appellee had, at some previous time, been the owner of the premises in controversy, but that she had subseqnently sold and conveyed the same to one Albert Wolf, and that appellants had, after such conveyance

to Wolf, leased the premises in good faith from Wolf, for a
period of nine years, beginning the 17th day of November,
1890, and paid him (Wolf) the sum of $1,500 in money there-
for, and that in addition the appellants had agreed to make
certain improvements on said lands. To this answer appel-
lee demurred, setting up that the contract made by Wolf
with appellants was void, for the reason that any contract
for use and occupation of lands in the Chickasaw Nation, for
a longer period than one year, was in contravention of the
Chickasaw Statutes. The appellee also alleged in her
demurrer that her contract with Wolf was void, having been
obtained through fraud, and that Wolf had subsequently
admitted the fraud, and had reconveyed the lands in con-
troversy to the appellee. Albert Wolf having died, one
Monroe Wolf filed an interplea in the case, claiming the
lands as the sole heir of Albert Wolf, deceased. This inter-
plea was not sustained, as subsequent proceedings will show.
There were many other allegations in the pleadings, which
it is not necessary to set forth in this opinion. On the 21st
day of November, 1894, the case was transferred to the
equity side of the docket, and referred to the master in
chancery. The master's report is set forth at length in the
record. It found the facts, briefly, as follows: That the
appellee was an Indian by blood; that the appellants were
citizens of the United States; that the appellee did convey
in November, 1890, the lands to Albert Wolf; that on the 23
day of November, 1891, Wolf reconveyed the same to appel-
lee, and that she is now the owner of the Indian title, and
was such owner at the time this suit was instituted; that
prior to the reconveyance, Wolf, through an alleged agent,
entered into the contract referred to with appellants for
$1,500 in money, to run nine years, appellants to put certain
improvements on the land. The matter set forth in detail
the value of the rents and cost of making the improvements
on each holding. The master states that his judgment

that after allowing the defendants (the appellants) the use of said land for the year 1891, in consideration of moneys paid by them to the agent of Wolf, the use of the land for the years 1892, 1893 and 1894 had repaid them for all improvements put thereon, and that their rents should begin with the year (1895.) The testimony taken by the master, and upon which his report is based, is not presented in the record certified to this court, and hence the facts found by him must be taken as true. On the 21st day of November, 1894, L. C. Johnson was appointed a receiver in the case, and he was ordered to take charge of all the land and improvements sued for, to collect and receive the rents until the final disposition of the case, and to hold them subject to the order of the court. The tenants in possession were ordered to surrender possession of the premises to the receiver, and to attorn to him therefor; and each tenant who should so elect might pay to the receiver the difference between the value of the improvements erected by him and the value of the use and occupation of the premises during the time of occupation, and such tenants should thereupon be fully exonerated and discharged from further liability. On the 10th day of July, 1895, the receiver submitted a report to the court to the effect that all of the tenants refused to comply with the order of court directing the receiver to take charge of said premises and to collect the rents, and he prayed the court to grant him a writ of assistance to put him in possession of the premises. The court, having heard this application, ordered the marshal to proceed at once to the premises, and to put the receiver in possession thereof, unless the defendants (appellants) shall each enter into a contract to rent said premises for the year 1895, upon terms which the receiver should deem reasonable. The persons who should not so contract were to be removed from the premises. On the 20th day of July, 1895, the case was heard by the court, and the court overruled all exceptions to the

master's report, and entered judgment in accordance there-with. The judgment of the court is set forth at length in the record. It found that the appellee was entitled to the immediate possession of the premises; that the defendants should be given credit for all improvements put on the lands and all moneys advanced by them for rent, and the amount due from each was stated. It was provided that the judgment for possession should be stayed until January 1, 1896, as to any and all of the defendants who should duly contract with and attorn to the receiver for the use and occupation of the land for the year 1895. All of the defendants entered into contract with the receiver for the use and occupation of the tracts respectively held for the year 1895, and were permitted to continue in possession thereof, except defendants J. K. White and Mrs. J. C. Henderson. The defendants all joined in an appeal to this court, and a supersedeas bond was filed with the clerk October 30, 1895. At the January term of this court the appeal was dismissed by the court as to all of the appellants except J. K. White and Mrs. J. C. Henderson, who alone are now interested in the further disposition of the case.

*F. C. Barry, A. C. Cruce* and *Thomas Norman,* for appellant.

1. An innocent purchaser takes a good title, even though the original conveyance from vendor to vendee is tinged with fraud. Davidson vs Davidson, 42 Ark. 362 One who voluntarily parts with property by sale, even though the sale may be induced by fraud, cannot follow the property into the hands of an innocent purchaser. Saddler vs Lewers, 42 Ark. 148. Such vendor cannot rescind a against an innocent purchaser. 21 A. & E. Enc. Law 83 Vendor can not assail a transaction made in good fait between vendee and a third person. Hoffman vs Noble, 3 A. D. 711; 64 A. D. 205; Preston vs Spaulding, 120 Ill. 208

2.   The common law action of ejectment was strictly possessory.   Hill vs Plunket, 41 Ark.  465; 6 A.  & E.  Enc. Law 225,   None but nominal damages and rents could be recovered in such  action.   Walker vs McGill, 40 Ark, 40; Newell on Ejectment, 607, 614.   The United States Court in the Indian Territory cannot adjourn to a day beyond its own term.   Supplement Rev. St. U. S. § 7, pp 672; 1 A. & E. Enc. Law 192.

3.   Where the rulings complained of appear of record, neither a  motion for a new trial or a bill of exceptions is necessary.   Ward vs  Carlton, 26 Ark.  662;  Badgett  vs Jordan, 32 Ark. 154; James Danley vs  Robbins heirs, 3 Ark. 144.   In equity cases all papers properly filed become  parts of the record, and neither a motion for a new trial nor a bill of exceptions is necessary.   Lemar vs Johnson  35 Ark. 225.

4.   An equitable defense cannot be set up in an action of ejectment. Hawkins vs  Mills, 1 C. C. A. 340; 49 Fed. 506; Fowler vs  Mora, 8 Otto 425.

5.   At common law a defendant in possession, may, in an action of ejectment, recoup the value of permanent improvements innocently placed on the  premises.   Ashley vs Little Rock, 56 Ark. 391; Rector vs aGines, 19 Ark. 71.

6.   The moving party cannot take advantage of his own wrong, in entering into an unlawful contract, but one who is brought into an action may set up  the  unlawfulness of the contract, which is sought to be enforced, as a  matter of de fense.   Shoreman  vs Eakin, 47 Ark.  352;  Miller  vs Ammon, 145 U. S. 421;  Dent  vs  Ferguson, 132  U.  S.  50.

*W. A. Ledbetter* and *S. T. Bledsoe,* for appellee.

1.   Appellee is not estopped from setting up  the illegality of the lease herein.   Whenever the illegality appears the disclosure is fatal to the case.   Hall  vs  Coppell,

74 U. S. 542. The lease is void because against public policy. Brown vs National Bank, 24 L. R. A. 206; Klenk vs Noby, 57 Ark. 304; Webb vs Davis, 37 Ark. 555; 2 Parsons on Contracts, (5 Ed.) 799; 1 Greenhood on Public Policy 115.

2. Before the adoption of the ejectment statute in Arkansas, rents could be recovered in an ejectment action. Jacks vs Dyer, 31 Ark. 334. The act of March 1, 1889 gives parties the benefit of the remedy provided by the ejectment statute of Arkansas.

3. The United States Court can adjourn to a day later than the day fixed for holding court at another place in the same district. State of Florida vs Charlotte Harbor Co., 70 Fed. 883.

SPRINGER, C. J. (after stating the facts.) The contract from Albert Wolf to appellants, relied upon by them, was in violation of the laws of the Chickasaw Nation with reference to the leasing of lands by its citizens to non-citizens. But it is contended on behalf of appellants that as between them and appellee the maxims, "*In pari delicto, melior est conditio possidentis,*" and "*In pari delicto potior est conditio defendentis,*" apply. Were Albert Wolf the party adverse to appellants in this action, this contention would be well founded. In law he could not take advantage of his own

Estoppel. wrong and set up the illegality of his lease against his lessee. Should he regain possession of the leased premises by force, the law would give a remedy against him. Should a stranger seek to avail himself of the illegality of the contract by invading the possession of the lessee, and thereafter averring the invalidity of the lease, he would be met with the principle that the sovereignty, and not an individual, shall vindicate the infraction of public law. But appellee was not a party to the lease relied upon. She cannot be affected by its provisions, unless the facts estop her to aver its illegality. Such an estoppel never arises. It is unneces

sary to determine whether the facts of this record would have been sufficient to estop her from showing her paramount title had the lease from Albert Wolf to appellants been in conformity with law. It was not in conformity with law, and it is fundamental that no one can estop himself to prove facts which show a contract to which he is not a party to be opposed to law or public policy. Greenh. Pub. Pol. 115. It follows, therefore, that whether the court overruled the plea of estoppel upon demurrer, or heard proof upon such plea, as the record shows, its conclusion was correct that the facts as to such estoppel did not constitute a defense.

*Estoppel. Public policy.*

On December 5, 1895, appellee filed a petition in the court below praying the court to correct an erroneous recital in the judgment which had theretofore been entered, and on the 4th day of January, 1896, the presiding judge granted the prayer of the petition, and made the correction. Such correction consisted in showing that the court heard evidence upon the plea of estoppel heretofore considered. This amended judgment was duly certified to this court. As we have held that, if the court did not sustain the demurrer, he should have done so, consideration of this question is not necessary to a disposition of this appeal, but, as it presents a matter of practice, it is not improper to determine it. Appellants' counsel insist that the amendment of the judgment was made in vacation, and that, therefore, this court should disregard it. They contend that as the regular term began at Ardmore on the first Monday in October, and the regular term at Pauls Valley on the second Monday in December, there could be no adjourned term of the Ardmore court after the holding of a court at Pauls Valley. We are of the opinion that the court had the right to adjourn to a day past the time of holding court at another place within the district. The amendment was not, therefore, made in vacation, but in open court, as the record shows, and all courts have the right to amend their records so as to make them speak the

truth. Bank vs Withers, 6 Wheat, 105; People vs Ah Ying, 42 Cal. 18.

The court below committed no error in transferring this case to the equity side of the docket. The lease, as such, was void; but it was more than a lease of land; it was also a contract for making certain improvements on the lauds which were to be made in lieu of cash payments, or of giving portions of the crop. The court below properly held that the appellee should not be permitted to repossess herself of the land in question without allowing appellants remuneration for the improvements they had made on the land. At the same time it was proper to require them to account for the benefits they had derived from the use of the land. These questions were such as could only be fully and properly determine with so large a number of defendants, each having separate interests, by the exercise of equity jurisdiction.

Improvements by tenant. Remuneration.

Upon a careful examination of the record, briefs, and arguments, in the case at bar, we have reached the conclusion that substantial justice has been done all concerned, and that no errors appear which entitle appellants to reversal of the judgment and decree entered by the court below. Affirmed.

LEWIS, J., concurs.